UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIEANN P.,[1] | Case No.:  22-cv-1316-MMP |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S OPENING BRIEF** |
| v. | |
| MARTIN O'MALLEY, Commissioner of Social Security,[2] | [ECF No. 22] |
| Defendant. | |

Plaintiff Julieann P. ("Plaintiff") appeals the final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act. [ECF Nos. 1, 22.] Plaintiff brings her appeal pursuant to 42 U.S.C. § 405(g). Plaintiff filed an

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

[2] Martin O'Malley, the current Commissioner of Social Security, is automatically substituted as defendant for Kilolo Kijakazi, the former Acting Commissioner of Social Security, pursuant to Federal Rule of Civil Procedure 25(d).

1

opening brief, to which Defendant responded. [ECF Nos. 22, 28.] No reply was filed. The parties have consented to the undersigned for all purposes. [ECF No. 30.]

After a thorough review of the parties' submissions, the administrative record, and the applicable law, the Court **REVERSES** the final decision of the Commissioner of Social Security dated December 1, 2021 and **REMANDS** for further administrative proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Administrative Record ("AR") 473–79, 502–11. In both applications, Plaintiff alleged disability commencing on December 5, 2002. AR 473, 502. Plaintiff's alleged impairments include bilateral carpal tunnel syndrome, status post bilateral release, tendinitis of the bilateral shoulders, status post left shoulder impingement surgery, and degenerative disc disease of the cervical spine. [ECF No. 22 at 3.] The claims were denied initially on February 9, 2011, and upon reconsideration on May 3, 2012. AR 248–53, 256–61. Plaintiff filed a written request for a hearing on February 14, 2013. AR 264–65.

On June 16, 2015, the Administrative Law Judge Robert Iafe ("ALJ") conducted a hearing at which Plaintiff, represented by her attorney, appeared and testified, as well as an impartial medical expert and vocational expert. AR 127–83. On September 19, 2015, ALJ Iafe issued a partially favorable decision determining Plaintiff was not disabled prior to December 1, 2012, but became disabled on that date due her age category change and has continued to be disabled; however, the ALJ determined Plaintiff was not under a disability at any time through December 31, 2008, the date last insured. AR 193; *see* AR 188–206.

Plaintiff requested Appeals Council review. AR 383–86. The Appeals Council granted review, and on February 27, 2017, issued a decision affirming the ALJ's finding

of disability beginning December 1, 2012[3] and vacating and remanding the decision with respect to the issue of disability before December 1, 2012. AR 213; *see* AR 211–15.

On remand, the Commissioner again selected ALJ Iafe to preside over the matter. AR 407–15. ALJ Iafe conducted a hearing on January 24, 2019, in which Plaintiff, represented by counsel, as well as an impartial vocational expert testified. AR 86–126. The ALJ held a supplemental telephonic hearing on November 9, 2021, to allow Plaintiff's representative to cross-examine the vocational expert regarding vocational interrogatories the ALJ propounded. AR 28, 63–85. Plaintiff and her counsel appeared, and the impartial vocational expert testified. AR  63–85. On December 1, 2021, the ALJ issued a decision finding Plaintiff "was not disabled prior to November 30, 2012, but became disabled on that date and has continued to be disabled" and further finding Plaintiff "was not under a disability within the meaning of the Social Security Act at any time through December 31, 2008, the date last insured." AR 31, 48–49.

Appeals Council review was denied on July 6, 2022. AR 1–6. Accordingly, the ALJ's decision dated December 1, 2021 is the final decision of the Commissioner of Social Security.

## II.    SUMMARY OF ALJ'S FINDINGS

### A.    The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not

---

[3] The initial determination by the ALJ found Plaintiff's age category changed on December 1, 2012. AR 28. The Appeals Council found Plaintiff's age category changed on November 30, 2012, the day preceding the anniversary of her birth. AR 213, 28. On remand, the ALJ subsequently "corrected the favorable portion of the prior decision to find an established onset date of November 30, 2012, the day before the claimant became 55 years of age." AR 28.

disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i) and (b); *see also* 20 C.F.R. § 416.920(a)(4)(i) and (b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least twelve (12) months; if not, the claimant is not disabled, and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 404.1509 (setting forth the twelve (12) month duration requirement); *see also* 20 C.F.R. §§ 416.920(a)(4)(ii) and (c), 416.909. If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. 20 C.F.R. § 404.1520(a)(4)(iii) and (d); *see also* 20 C.F.R. § 416.920(a)(4)(iii) and (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Therefore, the ALJ must determine the claimant's RFC before moving to step four.

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996). It reflects the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *1 ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments— even those that are not severe—and must assess her "work-related abilities on a function-

by-function basis." *Id.*; *see* 20 C.F.R. §§ 404.1545(a)(1)–(2) and (e), 416.945(a)(1)–(2) and (e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective"). An RFC determination must be based on "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3). A court must uphold an ALJ's RFC assessment when "the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence in the record favorable to [the plaintiff's] position." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step four of the sequential process, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(iv) and (f)–(g); *see also* § 416.920(a)(4)(iv) and (f)–(g).

At step five, the burden then shifts to the ALJ to establish the claimant is not disabled because there is other work existing in "significant numbers in the national economy" the claimant can do, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1); *see Hill*, 698 F.3d at 1162. The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all the claimant's physical and mental limitations that are supported by the record or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Id*. The determination of this issue comprises "the fifth and last step" in the sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## B.    The ALJ's Application of the Five-Step Process

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 5, 2002, the alleged onset date. AR 33 (citing 20 C.F.R. §§ 404.1571, 416.971).

At step two, the ALJ found since December 5, 2002, Plaintiff had the following severe impairments: "bilateral carpal tunnel syndrome, status post bilateral release, tendinitis of the bilateral shoulders, status post left shoulder impingement surgery, and degenerative disc disease of the cervical spine." *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).[4] The ALJ found Plaintiff had other medically determinable impairments that were not severe, including "diabetes mellitus, major depressive disorder in partial remission, anxiety, and various other acute medical issues such as mild hearing loss, TMJ disorder, sinusitis, diverticulosis of the colon, and left wrist ganglion cyst." *Id.* The ALJ reasoned these impairments "established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity and/or they do not meet the twelve-month durational requirement." *Id.* (citing 20 C.F.R. §§ 404.1521, 416.921 and SSR 85-28)

At step three, the ALJ found Plaintiff had "not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR 37 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). In particular, the ALJ found the "severity of the [Plaintiff's] physical impairments, considered singly and in combination, does not meet or medically equal the criteria of any listings, including 1.00 musculoskeletal listings." *Id.*

At step four, the ALJ found since December 5, 2002, Plaintiff had the RFC to perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b) except:

> the claimant is limited to never crawling or climbing ladders, ropes or scaffolds; occasional climbing of ramps and stairs; frequently balancing, stooping, kneeling, and crouching. She is also limited to occasional reaching overhead with bilateral upper extremities and frequent reaching in all other directions with the bilateral upper extremities. She is limited to occasional

---

[4] Plaintiff "stipulates that the ALJ fairly and accurately summarized the medical evidence of record, except as specified in the argument" and only disputes the ALJ's evaluation of her subjective statements. [ECF No. 22 at 4–5.]

handling, fingering, and feeling with skin receptors bilaterally. Lastly, the claimant must avoid exposure to extreme heat and cold, and workplace hazards such as dangerous machinery and unprotected heights.

AR 37–38.

At step five, the ALJ found "[p]rior to November 30, 2012, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claim could have performed." AR 47 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).

ALJ Robert Iafe determined Plaintiff "was not disabled prior to November 30, 2012, but became disabled on that date and has continued to be disabled through the date of this decision" and "was not under a disability within the meaning of the Social Security Act at any time through December 31, 2008, the date last insured." AR 48.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Id.* (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir.

22-cv-1316-MMP

2023); *see also Valentine*, 574 F.3d at 690. Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The ALJ is responsible for resolving conflicts in medical testimony as well as any ambiguities in the record. *Id.*; *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010; *see also Collings v. Saul*, 856 F. App'x 729, 730 (9th Cir. 2021).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

22-cv-1316-MMP

## IV.   ANALYSIS

Plaintiff argues the ALJ did not properly evaluate Plaintiff's symptom testimony. [ECF No. 22 at 5.]

### A.   Plaintiff's Testimony Regarding Her Hands and Wrists[5]

Plaintiff testified as to the alleged pain and limiting effects due to her hands and wrist at both the June 16, 2015 and January 24, 2019 hearings. *See* AR 123–24, 144–46, 154–59. Plaintiff explained generally, when her wrists were straight, she did not experience pain; however, even putting "a slight bend to it" triggers a "shock." AR 157. Plaintiff explained a "shock" felt like the nerves were "hitting something" followed by a burning sensation. AR 123–24. At both hearings, Plaintiff testified she had experienced this pain since at least 2002. AR 157, 123. Plaintiff testified she underwent surgeries of the carpal tunnel in 2003 and 2004, and there were multiple attempts to manufacture braces for her hands following the surgeries, but the braces caused her more pain. AR 145. Plaintiff testified her condition worsened after the surgeries. AR 157, 145.

Plaintiff testified she could use her hands on a daily basis, but there were certain things she could not do. AR 146–47, 154. According to Plaintiff, she received "shocks" right away while using a laptop because it required her to bend her wrist. AR 155. As a result, she testified she was able to use a laptop for less than one hour daily for checking email or social media. AR 146. Plaintiff further testified she could dress herself but had difficulty with buttons and experienced pain. AR 145. She also testified she could prepare meals but required help from her son, who lived with her, to handle heavy pots and pans and opens jars, which Plaintiff could not do. AR 155–56. In addition, Plaintiff testified she

---

[5] The AR also includes two Disability Reports that appear to be submitted by Plaintiff. *See* AR 552–59 (Disability Report – Appeal dated November 9, 2011); AR 561–68 (Disability Report – Appeal dated February 22, 2013). The latter one is not signed. *See* AR 568. Neither of these reports, however, specifically address the time period before the date of last insured. Moreover, as discussed below, the ALJ did not cite or discuss either report in his opinion.

could hold a plate for a minute but then had to set it down because her wrists went into a spasm. AR 157.

### B.   The ALJ's Evaluation

In discrediting Plaintiff's subjective statements, the ALJ acknowledged Plaintiff "alleged inability to work since December 5, 2002, due to pain and damage to hands/wrists." AR 38. The ALJ next found Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" were "partially inconsistent because the lack of medical evidence to support the allegations." *Id*. The ALJ explained "[t]he medical evidence does not even begin until March 2009 and the treatment was effective in controlling [Plaintiff's] symptoms" and further found "[t]he medical evidence is consistent with the opinion evidence, as explained below more fully." *Id*.

After summarizing the medical evidence, the ALJ provided three reasons for discrediting Plaintiff's subjective statements. First, the ALJ concluded the objective medical evidence and progress notes did not fully support or explain Plaintiff's allegations of the severity of her symptoms and resulting limitations, finding the imaging and physician examination findings were consistent with "mild to moderate" pain severity levels only. AR 43–44. The ALJ identified "a few inconsistencies that detract from [Plaintiff's] allegations of the severity of her symptoms and limitations" as follows:

> At the 2015 hearing, the claimant testified that she walked a golf course daily, and the record indicates significant walking of up to three miles a day, which the undersigned finds inconsistent with her allegations of disability but consistent with her ability to perform the standing or walking requirements of light work activity, especially given the lack of gait disturbance, lower extremity neurological deficits, and no assistive devices to ambulate. The claimant also testified at the hearing that before the date last insured, she merely received some physical therapy treatment with massaging and no other treatment was received before that time, which further supports a finding of nondisability, especially before the date last insurance [sic].

AR. 44.

Second, the ALJ also found "[d]espite [Plaintiff's] allegations of disability during the relevant period, she was able to complete a significant array of daily activities"

including "independently carrying for her own personal hygiene, taking care of her teenage son, cooking and meal preparation, and cleaning, driving and running errands." AR 44.

Finally, the ALJ found "despite allegations of disabling pain levels, the medications received were not a large dosage of narcotic pain medicine and there was no evidence of any significant medication side effects that would prevent her from performing the residual functional capacity finding." AR 44.

## C.    The Parties' Arguments

Plaintiff argues the ALJ erred by: (1) failing to provide specific, clear and convincing reasons to discount Plaintiff's testimony; (2) failing to connect any of Plaintiff's testimony to the ALJ's analysis of the objective medical records and to identify the other evidence in the record; and (3) improperly considering Plaintiff's activities of daily living. Plaintiff contends the nature of these errors—in particular, the ALJ's failure to connect any specific portions of Plaintiff's testimony to the parts of the record supporting the ALJ's decision—prevents the Court from determining whether substantial evidence supports the ALJ's decision, and Plaintiff's testimony was not discredited arbitrarily. [ECF No. 22.]

Defendant maintains the ALJ's rationale satisfies the clear and convincing standard. [ECF No. 28.]

## D.    Applicable Law

The Ninth Circuit has established a two-step analysis for evaluating a claimant's subjective symptom testimony. *Ferguson v. O'Malley,* --- F.4th ----, 2024 WL 1103364, at *3 (9th Cir. 2024); *Zuniga v. Saul,* 801 F. App'x 465, 466 (9th Cir. 2019) (citing *Vaszquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison,* 759 F.3d at 1014 (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir. 2007)). The claimant must only prove the impairment reasonably could be expected to produce some degree of pain or other symptom; she is not required to prove the impairment reasonably could be expected to produce the alleged severity or degree of pain or other

symptoms. *See id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Moreover, the claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* (citing *Smolen*, 80 F.3d at 1282).

If the claimant satisfies the first step "and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Zuniga*, 801 F.App'x at 466 (quoting *Lingenfelter*, 504 F.3d at 1036). The Ninth Circuit has reiterated that "[t]his is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *see Ferguson*, --- F.4th ----, 2024 WL 1103364, at *3.

Neither party contests the ALJ's determination that Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome, status post bilateral release, tendinitis of the bilateral shoulders, status post left shoulder impingement surgery and degenerative disc disease of the cervical spine. AR 33. Neither party alleges Plaintiff was malingering, and the record does not suggest as much. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding her symptoms. *See Lingenfelter*, 504 F.3d at 1036.

### E.    Analysis

The Court considers each reason the ALJ provided to discredit Plaintiff's subjective statements in turn.

#### 1.    Medical Evidence

The ALJ's first reason for discounting Plaintiff's subjective symptom testimony was the medical evidence did not fully support Plaintiff's alleged severity of her symptoms and resulting limitations. AR 38, 43–44. Plaintiff argues "beyond the conclusory statements that the objective evidence does not support the testimony, the ALJ nowhere connects any of [Plaintiff's] testimony to the ALJ's analysis." [ECF No. 22 at 9.] Plaintiff also contends merely providing a summary of the medical evidence is insufficient to establish specific,

1   clear, and convincing reasons to discredit Plaintiff's subjective symptom testimony. [*Id.*]

2   Plaintiff maintains the ALJ's failure "to connect any specific portions of [Plaintiff's]

3   testimony to the parts of the record supporting the ALJ's decision prevents the Court from

4   determining whether the ALJ's decision was supported by substantial evidence." [*Id.*]

5   Defendant does not address this specific argument but contends generally the ALJ

6   "highlighted the relatively benign medical evidence during and after the relevant period

7   that were inconsistent with disabling symptom allegations" and provided various

8   examples. [ECF No. 28 at 6.]

9       The Ninth Circuit has consistently held the ALJ must specify the symptom testimony

10   that is discredited and what facts in the record undermine the testimony. *See Smolen*, 80

11   F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible

12   and what facts in the record lead to that conclusion."); *Brown-Hunter v. Colvin*, 806 F.3d

13   487, 489 (9th Cir. 2015) ("[W]e require the ALJ to specify which testimony she finds not

14   credible, and then provide clear and convincing reasons, supported by evidence in the

15   record, to support that credibility determination.").[6] "General findings are insufficient;

16   rather, the ALJ must identify what testimony is not credible and what evidence undermines

17   the claimant's complaints." *Roberts v. Saul*, 829 F. App'x 757, 760 (9th Cir. 2020) (quoting

18   *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *superseded by regulation on other*

19   *grounds*); *see also Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020) ("Under our cases,

20   the ALJ must identify the specific testimony that he discredited and explain the evidence

21

22

23   [6] On March 28, 2016, the Social Security Administration issued new guidance regarding

24   how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL
     1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p).

25   Additionally, effective March 27, 2017, the Social Security Administration updated the
     relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20

26   C.F.R. § 416.929. The Agency explained the purpose of the new guidance was to

27   "eliminat[e] the use of the term 'credibility' from our sub-regulatory policy, as our
     regulations do not use this term. In doing so, we clarify that subjective symptom evaluation

28   is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

undermining it."). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Werlein v. Berryhill*, 725 F. App'x 534, 535 (9th Cir. 2018) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2002)).

If the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278. It is exclusively within the ALJ's province to evaluate the claimant's testimony. *Id.* Moreover, a court is "constrained to review the reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter*, 806 F.3d at 494).

With respect to the medical records, the ALJ found "imaging did not fully explain [Plaintiff's] allegations of the severity of her physical symptoms" explaining "[a]lthough she alleged disabling pain, the imaging discussed above showed findings of mild to moderate severity" and "[i]maging confirmed some musculoskeletal disorders, but the findings were consistent with the treatment [Plaintiff] received for these impairments with some medication, injections, and physical therapy." AR 43. The ALJ also found the progress notes "consistently indicated relatively unremarkable physical examination findings except for some subjective pain complaints in the neck, shoulders, and hands, and reduction in shoulder range of motion, but no significant neurological deficits of the lower extremities that would preclude the sitting, standing, or walking requirements of light work." AR 44. The ALJ continued, explaining he "included lifting/carrying, postural, reaching, and manipulative limitations consistent with the clinical findings of bilateral shoulder and hand symptoms and the opinion evidence discussed above" and "[t]here were also no recommended restrictions placed on activity that would preclude performing the residual functional capacity and no prescribed assistive devices for ambulation." *Id.* Additionally, Plaintiff "ambulated independently without the need for an assistive device." *Id.* Finally, the ALJ noted "[t]he physical examination findings were consistent with no more than mild-to-moderate pain levels." *Id.*

The Court finds, with the caveat of the two inconsistencies discussed below, the ALJ failed to identify the specific testimony he discredited and explain the evidence

undermining such testimony. Notably, the ALJ did not identify or summarize Plaintiff's relevant testimony or subjective statements; nor did the ALJ expressly consider or cite Plaintiff's function reports.[7] Though the ALJ acknowledged Plaintiff "alleged inability to work since December 5, 2002, due to pain and damage to hands/wrists," AR 38, and Plaintiff "alleged disabling pain," AR 43, at no point in his analysis did he identify the *specific* subjective statements he discredited, particularly related to the alleged pain or limiting effects of Plaintiff's wrists and hands. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (recognizing the ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible") (brackets in original) (internal citations omitted); *Lambert*, 980 F.3d at 1277 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [the plaintiff's] pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony.") (quoting *Brown-Hunter*, 806 F.3d at 488–89); *see also Patricia R. v. Kijakazi*, No. 21-cv-1517, 2023 WL 112457, at *5 (S.D. Cal. Jan. 5, 2023) ("The ALJ was required to clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement."). The ALJ provided a relatively detailed overview of Plaintiff's medical history, but "providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert,* 980 F.3d at 1278 (alteration and emphasis in original) (citations omitted).).

The only testimony identified in the ALJ's analysis is regarding two alleged "inconsistencies that detract from [Plaintiff's] allegations of the severity of her symptoms

---

[7] Although the ALJ referenced Plaintiff's function report, finding the third-party function report was a "reiteration of claimant's function report, discussed above," AR 46, the ALJ did not cite or discuss Plaintiff's reports in his opinion or evaluation of Plaintiff's subjective testimony. *See* AR 38–44.

and limitations." AR 44. The Ninth Circuit recently reiterated "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original). "Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Ferguson*, --- F.4th ----, 2024 WL 1103364, at *4 (emphasis in original). Accordingly, the Court must determine whether the ALJ satisfied this standard.

The ALJ identified the first inconsistency as follows:

> At the 2015 hearing, the claimant testified that she walked a golf course daily, and the record indicates significant walking of up to three miles a day, which the undersigned finds inconsistent with her allegations of disability but consistent with her ability to perform the standing or walking requirements of light work activity, especially given the lack of gait disturbance, lower extremity neurological deficits, and no assistive devices to ambulate.

AR 44. At the June 16, 2025 hearing, Plaintiff testified she walked a three-mile track around the border of a golf course. AR 144–45. The ALJ does not explain, and it is unclear to the Court, how Plaintiff's testimony that she could walk up to three miles a day is inconsistent with her allegations of disability, which the ALJ acknowledged was "alleged inability to work since December 5, 2002, due to pain and damage to hands/wrists." AR 38. Further, the general medical findings identified by the ALJ—"lack of gait disturbance, lower extremity neurological deficits, and no assistive devices to ambulate"—have no obvious relevance or connection to Plaintiff's hands or wrists, and the ALJ does not identify one. *See* AR 44. Though Defendant selectively identifies various statements in Plaintiff's Disability Reports in support of the ALJ's analysis, such as Plaintiff "was unable to stand for more than 15 minutes without pain" and spent "98% of the time" in her bed, ECF No. 28 at 4, the ALJ did not identify such statements in his analysis. *See Garrison*, 759 F.3d at 1010 (The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not

1    rely."); *Brown-Hunter*, 806 F.3d at 492 (courts are "constrained to review the reasons the

2    ALJ asserts"). Thus, the Court finds this example does not amount to a specific, clear, and

3    convincing reason to discredit Plaintiff's testimony.

4          The ALJ also identified a second inconsistency, explaining:

5          [Plaintiff] also testified at the hearing that before the date last insured, she
           merely received some physical therapy treatment with massaging and no other
6          treatment was received before that time, which further supports a finding of
           nondisability, especially before the date last insurance [sic].
7

8    AR 44. The ALJ, however, mischaracterizes Plaintiff's testimony. At the January 24, 2019

9    hearing, Plaintiff testified the physical therapists massaged her, and no other treatment was

10   received *from the physical therapists*. *See* AR 102–03 (discussing physical therapist testing

11   and records, Plaintiff stated "You know what they did? They massaged me. They just

12   rubbed me. That's all they did."). Plaintiff unequivocally testified at the June 2015 hearing

13   she underwent wrist surgeries of the carpal tunnels in 2003 and 2004. AR 145, 159 (Q.

14   "And your surgeries were 2004 which certainly predates what we have for our date last

15   insured to be concerned about. A. "On the hands.").[8] Plaintiff also testified, following her

16   2003 and 2004 surgeries, there were multiple attempts to manufacture braces for her hands,

17   but the braces caused her "a lot more pain than they helped" her. AR 145. Thus, Plaintiff

18   did not testify no other treatment was received before the date of last insured, and the ALJ

19   erred in finding otherwise.

20         Substantial evidence does not support the inconsistencies identified by the ALJ; thus,

21   the ALJ's stated reasons do not constitute specific, clear, and convincing reasons to

22

23   ───────────────

24   [8] The ALJ acknowledged these surgeries earlier in his opinion: "[b]ased on a discussion in
     the records, it appears as if the claimant underwent bilateral carpal tunnel release back in
25   2003 and 2004, for a median nerve entrapment of both hands." AR 42. The ALJ further
     recognized no medical records corroborated this fact as the medical records in the AR start
26   in March 2009. AR 42–43. Regardless, the reason the ALJ provided for the alleged
     inconsistency was Plaintiff *testified* no other treatment was received before the date last
27   insured, which is not accurate.
28

22-cv-1316-MMP

discount Plaintiff's subjective statements. Further, the ALJ did not identify any other specific testimony that he discredited. Accordingly, the ALJ's analysis does not satisfy the clear and convincing standard that is required by the Ninth Circuit. *See Smartt*, 53 F.4th at 499 ("Ultimately, the 'clear and convincing' standard requires an ALJ to show his work").

### 2.    Activities of Daily Living

The ALJ's second reason for discrediting Plaintiff's subjective statements was "[d]espite [her] allegations of disability during the relevant period, she was able to complete a significant array of daily activities" namely "independently caring for her own personal hygiene, taking care of her teenage son, cooking and meal preparation, and cleaning, driving, and running errands." AR 44.

"An ALJ may also consider 'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Smartt*, 53 F.4th at 499 (quoting *Lingenfelter*, 504 F.3d at 1040); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (an ALJ may discount a claimant's testimony if the claimant's daily activities contradict the testimony or if the daily activities meet the threshold for transferable work skills). However, "[o]nly if the level of activity [is] inconsistent with Claimant's claimed limitations do daily activities have any bearing on Claimant's credibility." *See Ferguson*, --- F.4th ----, 2024 WL 1103364, at *6 (quoting *Reddick v. Chater*, 157 F.3d. 715, 722 (9th Cir. 1998) (internal quotation marks omitted)); *see also Revels*, 874 F.3d at 667 ("Though inconsistent daily activities may provide a justification for rejecting symptom testimony, 'the mere fact that a plaintiff has carried on certain daily activities . . .  does not in any way detract from her credibility as to her overall disability.'") (citation omitted)); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged" can be a reason to discredit a claimant's testimony.).

Plaintiff argues her activities are "not so extensive on their own to clearly undermine" her statements without further explanation. [ECF No. 22 at 13.] Defendant contends the ALJ's rationale related to when a claimant's activities contradict other

testimony, and "[t]he fact that her activities contradicted the degree of limitation Plaintiff alleged was sufficient to discount her claims." [ECF No. 28 at 5.]

As noted above, the ALJ acknowledged Plaintiff's alleged disability was based on pain and damage in her hands and wrists. AR 38. Plaintiff testified she experienced pain when her wrist was bent but not straight, and as a result, she could do some things but not others due to pain. AR 156–57, 146, 154. With respect to the activities the ALJ identified, Plaintiff testified she could dress herself but experienced pain with buttons, AR 145, and could cook and prepare meals but required help from her son, who lived with her, to handle heavy pots and pans and opens jars. AR 155–56. She indicated in her Disability Report dated November 9, 2011 she could drive, but driving hurt, particularly when she rested her hands on the wheel. AR 558.[9] Plaintiff also indicated in a subsequent Disability Report she could grocery shop, but her son had to push the cart for her. AR 566. She testified she also held the grocery bag with her fingers to minimize pain to her hands. AR 156.

The ALJ identified certain of Plaintiff's activities but did not explain how these activities were inconsistent with Plaintiff's testimony regarding her alleged disability— pain in her wrists and hands. Nor did the ALJ address Plaintiff's alleged limitations in performing these activities. Moreover, the activities identified are basic chores, often requiring the help of her son, who lived with Plaintiff. There is no indication the limited activities Plaintiff engaged in, often with the help of her son, comprised a "substantial" portion of her day or were "transferrable" to a work environment. *See Ghanim,* 763 F.3d at 1165. Based on the ALJ's stated rationale consisting of identifying the activities only without further explanation, the Court cannot conclude such activities are inherently inconsistent with Plaintiff's testimony. *See Revels*, 874 F.3d at 667 ("A claimant does not

---

[9] As noted above, it is unclear from the report itself if Plaintiff's statements addressed the time period prior to the date of last insured; however, the Court merely identifies Plaintiff's subjective statements regarding the activities identified by the ALJ in considering whether the activities contradict her testimony.

need to be utterly incapacitated in order to be disabled.") (internal citation and quotation marks omitted); *Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically or take medication."). As such, the Court cannot find the ALJ's discrediting of Plaintiff's subjective statements based on the activities of daily living identified to be clear and convincing.

### 3. Narcotic Pain Medicine

The ALJ's third reason for discrediting Plaintiff's subjective statements was "despite allegations of disabling pain levels, the medications received were not a large dosage of narcotic pain medicine and there was no evidence of any significant medication side effects that would prevent her from performing the residual functional capacity finding." AR 44.

Plaintiff does not challenge or address this reason in her briefing, but Defendant argues "Plaintiff's lack of aggressive treatment for her allegedly debilitating conditions detracted from her claims." [ECF No. 28 at 5.] Defendant further argues "[t]his is especially so in light of her testimony that her limitations have existed since November 2001 and 'nothing has changed.'" [*Id.* (citing AR 157).]

The ALJ's discounting of Plaintiff's subjective statements due to the amount of narcotic medication she received does not satisfy the clear and convincing standard in this case. The Ninth Circuit has recognized "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)) (finding treatment of physical ailments with an over-the-counter pain medication was conservative). With respect to narcotic pain medication in particular, district courts have recognized "authority considering whether use of narcotic pain medication by itself constitutes 'conservative' treatment goes both ways." *Fiona M. B. v. Kijakazi*, No. 20-CV-1250, 2022 WL 848332, at *2 (S.D. Cal. Mar. 22, 2022) (quoting *Vuoso v. Colvin*, No. CV 15-1255, 2016 WL 1071576, at *9 (C.D. Cal. Mar. 16, 2016)) (gathering cases); *see also*

*Parker v. Saul*, No. 20CV2530, 2022 WL 4798162, at *7 (S.D. Cal. Sept. 30, 2022) ("Authority on whether narcotic pain medication alone constitutes conservative treatment is inconsistent."); *Bostock v. Berryhill*, No. 18-CV-02565, 2018 WL 5906174, at *4 (C.D. Cal. Nov. 9, 2018) (citing string of cases). "When treatment is limited to nonnarcotic medications and noninvasive therapies, the treatment is more likely to be considered 'conservative.'" *Fiona M. B.*, 2022 WL 848332, at *2. "But, in general, the Ninth Circuit and district courts within this circuit have viewed the use of narcotic pain medication as non-conservative treatment, particularly when in conjunction with other treatments that were also not conservative." *Bostock*, 2018 WL 5906174, at *4 (citing, *inter alia*, *Lapeirre–Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (holding treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative)).

Even if "not a large dosage of narcotic pain medicine" on its own could be considered conservative or routine treatment, the record—both Plaintiff's testimony, other medical evidence, as well as the medical records beginning in March 2009—establish Plaintiff's narcotic pain medicine was but one of numerous medical interventions to treat her alleged symptoms during the relevant time period. *See Lapeirre–Gutt*, 382 F. App'x at 664 ("Even assuming Lapeirre–Gutt's regimen of powerful pain medications and injections can constitute 'conservative treatment,' . . . it is untrue that Lapeirre–Gutt's treatment has been so limited."). In particular, the ALJ acknowledged, based on Dr. Schosheim's review of the medical records and testimony which the ALJ afforded great weight, it appeared Plaintiff underwent multiple surgeries of her hands and wrists prior to November 2012: bilateral carpal tunnel release in 2003 and 2004 for a median nerve entrapment of both hands and wrist surgery in 2011 for a ganglion cyst that was removed and issues concerning bilateral shoulder problems. AR 42–43, 45. The ALJ also acknowledged Plaintiff underwent a right L4-5 transforaminal epidural steroid injection for her lumbar spine in August 2012 and surgery in October 2012 for "right shoulder arthroscopy, biceps tenotomy, and arthroscopic subacromial decompression" followed by twelve weeks of

physical therapy. AR 41. The Court cannot find Plaintiff's treatment of narcotic pain medication combined with multiple surgeries of the hands and shoulders, an epidural steroid injection, followed by twelve weeks of physical therapy to be conservative. Moreover, the ALJ did not point to anything in the record suggesting more aggressive procedures or treatment were available. *See Lapeirre-Gutt*, 382 F. App'x at 664 ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

The Court finds the ALJ's stated reason that Plaintiff received not a large dosage of narcotic pain medicine was not a specific, clear, and convincing reason to discount Plaintiff's subjective statements, particularly when the Court has already found the ALJ's other two reasons were improper.

## F.    Remand

The Court must still affirm "if the error is harmless." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). An error is considered harmless when it is "inconsequential to the ultimate nondisability determination." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti*, 533 F.3d at 1038).

The Court finds the ALJ's discrediting of Plaintiff's testimony without clear and convincing reasons supported by substantial evidence was not harmless. *See Lambert*, 980 F.3d at 1278 ("Because the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,' we cannot treat the error as harmless.") (quoting *Treichler*, 775 F.3d at 1103); *see also Ferguson*, --- F.4th ----, 2024 WL 1103364, at *3 ("substantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms'") (quoting *Lingenfelter*, 504. F.3d at 1035). Thus, the Court has discretion to either remand for further proceedings before the ALJ or remand for an award of benefits. *Garrison*, 759 F.3d at 1019. Where "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Id.* (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.

1981)); *see also Revels*, 874 F.3d at 668. Plaintiff seeks remand for further administrative proceedings to correct the legal errors. [ECF No. 22 at 15.] The Court agrees and finds remand for further administrative proceedings is appropriate.

## V.  CONCLUSION

For the foregoing reasons, the Court **REVERSES** the final decision of the Commissioner of Social Security dated December 1, 2021 and **REMANDS** the matter for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). Accordingly, the Court **GRANTS** Plaintiff's opening brief, ECF No. 22, and **DENIES** Defendant's responsive brief, ECF No. 28.

The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated:  March 29, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge

22-cv-1316-MMP